UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-10971-RGS

ARGONAUT INSURANCE COMPANY and
ZURICH AMERICAN INSURANCE COMPANY

v.

GID INVESTMENT ADVISERS CORPORATION and
WINDSOR PROPERTY MANAGEMENT COMPANY

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

September 5, 2024

STEARNS, D.J.

Defendant Windsor Property Management Company (Windsor) is a named defendant in a multidistrict litigation class action currently pending in the Middle District of Tennessee (the Litigation). *See In re RealPage, Inc. Rental Software Antitrust Litigation (No. II)*, No. 3:23-md-03071 (M.D. Tenn.). Plaintiffs Argonaut Insurance Company (Argonaut) and Zurich American Insurance Company (Zurich) (collectively, the Excess Insurers) filed this declaratory judgment action against Windsor and its parent company, GID Investment Advisers Corporation (GID) (collectively, the Insureds), seeking a declaration that the Litigation is not covered under the excess insurance policies which they sold to the Insureds. The Insureds

move for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on "the narrow but critical question of whether the Professional Services Exclusion relieves the Excess Insurers of their duty to advance defense costs." Defs.' Mem. in Supp. of Mot. for Partial J. on the Pleadings (Mem.) [Dkt # 28] at 7. For the following reasons, the court will deny their motion.

## BACKGROUND

Federal Insurance Company (Chubb) sold the Insureds[1] an insurance policy for the period of October 1, 2022, through October 1, 2023 (the Primary Policy). This policy contains several coverage parts, including, as relevant here, directors' and officers' liability coverage for:

> Loss which such Organization becomes legally obligated to pay on account of any Claim first made against the Organization during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act by the Organization before or during the Policy Period.

Primary Policy [Dkt # 8-1] at 25. "Loss on account of any Claim . . . based upon, arising from, or in consequence of performing or the failure to perform any professional service," however, is expressly excluded from the scope of directors' and officers' liability coverage. *Id.* at 28.

---

[1] Although GID is the only named insured, the Primary Policy covers Windsor as a subsidiary of GID.

The Primary Policy also includes a set of General Terms and Conditions which, among other things, delineates the parties' duties should any claim be made under the Primary Policy. Section VII of the General Terms and Conditions states:

> (A) It shall be the duty of the Insured and not the duty of the Company to defend Claims made against the Insured. The Insured shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the approval of the Company, which shall not be unreasonably withheld. . . .
>
> (E) As a condition of advancement of Defense Costs, the Company may, at its sole option, require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any amounts paid to or on behalf of any Insured if it is determined that any such amounts incurred by such Insured were not covered.

*Id.* at 19-20. An Amplifier Endorsement to the Primary Policy amends Section VII by adding the following language "at the end":

> Defense Costs shall be advanced on a current basis, but no later than ninety (90) days after receipt by the Company of invoices or bills detailing such Defense Costs and all other information requested by the Company with respect to such invoices or bills.
>
> The Company shall not seek repayment from an Insured Person of advanced Defense Costs unless there has been a final, non-appealable adjudication against such Insured Person of the conduct set forth in the applicable personal conduct exclusion.

*Id.* at 68.

The Primary Policy limits Chubb's aggregate liability for covered losses to $5 million. The Insureds obtained a first excess insurance policy from Argonaut for $5 million excess to the $5 million covered by Chubb and a second excess insurance policy from Zurich for $5 million excess to the $10 million covered by Argonaut and Chubb. The Argonaut and Zurich excess insurance policies follow the form of the Primary Policy except where otherwise noted.

## LEGAL STANDARD

Although a Rule 12(c) motion implicates the pleadings as a whole rather than just the complaint, because it "calls for an assessment of the merits of the case at an embryonic stage," *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006), "it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). In this posture, the court "must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Fin. Corp.*, 446 F.3d at 182. "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's

4

entitlement to a favorable judgment." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006).

## DISCUSSION

The Insureds' arguments in favor of partial judgment hinge on the underlying assumption that the Primary Policy encompasses a duty to defend, such that the common law "potential coverage" standard applies.[2] Because the Excess Insurers dispute this premise, the court begins its analysis by interpreting the insurance policy.[3]

Insurance contracts, like all contracts, "are to be construed 'according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.'" *Cody v. Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982), quoting *MacArthur v. Massachusetts Hosp. Serv., Inc.*, 343 Mass. 670, 672 (1962). If the intended meaning of the words is clear, the contract "must be enforced in accordance with its terms." *Cody*, 387 Mass. at 146, quoting *Hyfer v. Metro. Life Ins. Co.*, 318 Mass. 175, 179 (1945).

---

[2] For example, the Insureds contend that, because the Professional Services Exclusion is at least "ambiguous with respect to its applicability" in the Litigation – *i.e.*, because the Litigation is potentially covered by the policy – the Excess Insurers have a duty to defend (or at the very least, advance defense costs) for the Litigation. Mem. at 3.

[3] "The proper interpretation of an insurance policy is a matter of law to be decided by a court." *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 350 (2012).

5

"When the policy language is ambiguous," however, "'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.'" *Boazova*, 462 Mass. at 350-351, quoting *August A. Busch & Co. v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959).

Here, the Primary Policy expressly disclaims any duty to defend. *See* Primary Policy at 19 ("It shall be the duty of the Insured and not the duty of the Company to defend Claims made against the Insured."). Nothing in the Amplifier Endorsement alters the plain text of this disclaimer. *See id.* at 68 (indicating that the language "is added at the end" of Section VII, *i.e.*, that it does not override, replace, or amend any preexisting provision within that section). Because "[e]very word in an insurance contract 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable,'" *Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621, 628 (2007), quoting *Jacobs v. United States Fid. & Guar. Co.*, 417 Mass. 75, 77 (1994), there accordingly is no room for ambiguity on this point.

To the extent that the Insureds nonetheless seek to impose an independent duty to advance defense costs on the Excess Insurers, the court is not persuaded. Although the Amplifier Endorsement technically does

6

contain the statement that "Defense Costs shall be advanced on a <u>current basis</u>,'" Defs.' Reply [Dkt # 33] at 2 (emphasis in original), quoting Primary Policy at 68, ambiguity only exists when those words are read in isolation. When the rest of the sentence is considered, and when that sentence is viewed in the context of Section VII as a whole – in particular, Section VII(E), which unequivocally permits the Excess Insurers to place at least one condition on the advancement of defense costs – the meaning of the added language becomes clear. It does not create any freestanding duty to advance defense costs but instead delineates the payment mechanism that will apply when defense costs are advanced (either because the insurer voluntarily assumes the duty, as Chubb has done here, or because some other provision(s) within the Primary Policy creates an entitlement to them).

In sum, the court concludes that the Excess Insurers have no duty to defend under the Primary Policy and that the contractual provisions relied upon by the Insureds do not create any independent duty to advance defense costs. Rather, Section VII(E) is written in the conditionals: If the insurer, in its discretion, undertakes to advance funds for a defense, it may, "at its sole option," dictate the terms and conditions under which the funds will be returned should it be determined that the amounts at issue were not covered by the Primary Policy. Primary Policy at 20. It has long been the law that,

7

in a declaratory judgment action, a party relying on a condition (here, the execution of a subrogation agreement) must prove that the condition did, in fact, occur. *See Patriot Power, LLC v. New Rounder, LLC*, 91 Mass. App. Ct. 175, 180 (2017), citing the "seminal case" *Gray v. Gardner*, 17 Mass. 188 (1821). Here it is undisputed that the Insurer never offered to enter such an agreement with the Insured. As with any condition precedent, "[i]f the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 420-421 (2005), quoting *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 45 (1991). The Insureds' merits arguments, which hinge on the generous duty to defend standard applying, accordingly fail.

## ORDER

For the foregoing reasons, the motion for judgment on the pleadings is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE